## UNITED STATE DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TENNESSEE

**CENTRAL MUTUAL INSURANCE**   ]
**COMPANIES and ALL AMERICA**   ]
**INSURANCE COMPANIES,**   ]
   ]
   **PLAINTIFFS,**   ]
   ]   **CASE NO. _____**
**vs.**   ]
   ]
**FLINT AND KAY COX, COX**   ]
**PARADISE LLC, CCM**   ]
**ASSOCIATES LLC, and COX**   ]
**MCCARVER LP,**   ]
   ]
   **DEFENDANTS.**   ]

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the plaintiff, Central Mutual Insurance Companies and All

America Insurance Companies, by and through their attorneys and files this

Complaint for Declaratory Judgment pursuant to the Tennessee Declaratory

Judgment Act (Tenn. Code Ann. 29-14-101 et. seq.) for a declaration of the rights

and responsibilities of the parties under the contracts of insurance governing the

losses claimed by the defendants and named insured's herein. As grounds for this

complaint the plaintiffs state:

1

## BACKGROUND AND JURISDICTIONAL STATEMENT

1. The plaintiff Central Mutual Insurance Companies is an insurance company doing business at its principal place of business in Van Wert, Ohio. Central is a resident of Ohio.

2. The plaintiff All America Insurance Companies is an insurance company doing business at its principle place of business in Van Wert, Ohio. All America is a resident of Ohio.

3. At all times pertinent to the allegations of this Declaratory Judgment Action, Central and All America ("plaintiffs") issued and had policies of insurance in place governing the losses as alleged in various State Court Complaints for breach of contract, bad faith and claims under the Tennessee Consumer Protection Act as filed by the above named defendants herein. A copy of the Complaints are attached hereto as Exhibit 1.

4. The defendant Cox Paradise LCC is an LLC owning certain properties in the State of Tennessee as described in the Complaints attached as Exhibit 1 to this Declaratory Judgment Action. At all times pertinent to the allegations of the attached Complaint and relating to this action, this defendant was insured by the policy of insurance attached hereto as Exhibit 2.

2

5. The defendants Flint and Kay Cox own certain properties in the State of Tennessee as described in the Complaint attached as Exhibit 1 to this Declaratory Judgment Action. At all times pertinent to the allegations of the attached Complaint and relating to this action, these defendants were insured by the policy of insurance attached hereto as Exhibit 2.

6. The defendant CCM Associates LLC is an LLC owning certain properties in the State of Tennessee as described in the Complaint attached as Exhibit 1 to this Declaratory Judgment Action. At all times pertinent to the allegations of the attached Complaint and relating to this action, this defendant was insured by the policy of insurance attached hereto as Exhibit 2.

7. The defendant Cox-McCarver LP is an LP owning certain properties in the State of Tennessee as described in the Complaint attached as Exhibit 1 to this Declaratory Judgment Action. At all times pertinent to the allegations of the attached Complaint and relating to this action, this defendant was insured by the policy of insurance attached hereto as Exhibit 2.

8. This Court has jurisdiction over the parties by virtue of diversity jurisdiction as outlined in 28 USC Section 1441 and that the amount in controversy exceeds the jurisdictional amounts as outlined in the subject statutes giving jurisdiction to this Court as the plaintiffs have claimed almost 10 million dollars in

damages relating to the claimed losses under the applicable policies of insurance. The plaintiffs further assert that the resolution of the issues outlined herein will assist in the ultimate resolution of the claims involved with the losses described in this complaint. Moreover, the plaintiff alleges that the determinations of the issues surrounding this action will clarify issues involving policy interpretation and interpretation of the subject policy language including issues of coverage. Consequently, the determination of the rights and responsibilities of the parties to this litigation pursuant to the declaratory judgment sought herein will clarify legal issues that will assist in the resolution of this claim and the issues surrounding interpretation of key policy provisions impacting the claim.

9. The plaintiffs filed an answer and amended answers to the complaints filed by the above named defendants. A copy of the Amended Answer to the Complaints filed by the defendants is attached hereto as Exhibit 3.

## FACTUAL ALLEGATIONS

10.  Various claims under the policies of insurance as evidenced by Exhibits 2-5 were made by the defendants named herein.

11.  The defendants claimed various damages relating to storms allegedly occurring in the areas where the subject buildings were located.  The alleged losses were reported to the plaintiffs by the defendants.

4

12. After the losses were reported, the plaintiffs undertook to adjust and investigate the subject claims, making an assessment of the losses claimed by the defendants pursuant to the terms and conditions of the policies of insurance attached hereto as Exhibit 2.

13. Communications occurred through representatives of the plaintiffs and the defendants regarding the scope and relationship of damages relating to the buildings insured by Exhibits 2. The defendants did employ the services of a public adjuster.

14. The plaintiffs also employed the services of an outside adjuster.

15. During the investigation of the claims the plaintiffs employed the services of two forensic engineers to make a determination as to the scope of damages and whether those damages are related to the claimed storm losses. After an investigation into the scope and causal relationship of the damages, the forensic engineers issued reports attached as Exhibit 4 hereto. Thereafter, the plaintiffs and defendants entered into discussions regarding the scope of damages and the relationship of the damages to the claimed storm losses.

16. The parties continued their discussions regarding the loss. Ultimately the defendants, through their public adjuster made an attempt to invoke an appraisal clause in the contracts of insurance attached as Exhibit 2 which reads:

*"Appraisal... If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction."*

17.   Subsequent to the defendant's public adjuster's attempts to invoke the appraisal provisions of the insurance contracts attached as Exhibit 2 hereto, the defendants disavowed the appraisal process.  The defendants did not wish to proceed with appraisal and wished to discuss the matter further before invoking the appraisal provisions of the insurance contracts attached as Exhibit 2 hereto. Consequently, the appraisal process was not invoked by the defendants under the various contracts of insurance governing the properties insured by the policies of insurance.

18. Therefore, there was no agreement to proceed with appraisal. As evidence of the intent not to invoke the appraisal provisions the plaintiffs allege that the following emails demonstrate that the parties did not attempt to reach an agreement on appraisal or on the appointment of an umpire.   Moreover, the

defendants did not wish to proceed with the appraisal process as described in the

policies of insurance. The subject emails state as follows:

> **Email from David Brown on Monday, March 19, 2012**: "Mr. Cox, I know we have played phone tag a few times since we spoke recently. It is our understanding you wish to discuss the claims presented for properties owned by Flint and Kay Cox, Cox Paradise, and Cox-McCarver. As you know, your representative, Jeff Vise, invoked the appraisal clause on these properties. We have been ready to name our appraiser, but knew you had an interest in discussing before proceeding. With this in mind, we are suspending the appointment of our appraiser until we have been able to discuss these claims. Please contact me at your earliest convenience."

> **Email from David Brown on May 1, 2012**: "Mr. Cox, we have had no response from you regarding further discussion of these claims. If we do not hear from you by May 10, 2012, we will proceed with the appraisal and the naming of our appraiser."

> **Email exchange between Flint Cox and David Brown on May 24, 2012**: "it is been over two weeks since we talked. My understanding was you wish to review your files on the various properties and then have further discussion. Where do you stand on your review? We want to resolve any issues in an expeditious manner. The best scenario is to reach an agreement on all of the properties in which you have questions. At a minimum, we can hopefully narrow the field and identify the locations where questions still remain... David Brown" **Flint Cox responds**: "David I felt that every property I mentioned to you felt that you had no liability on I disagree on that. I understand your job and I hope you understand my role. Every claim has been categorically denied. I don't see any compromise being reached unless you have some other thoughts." **Response from David Brown**: "it sounds like you are rejecting our evaluation on every property. Does this mean you wish to proceed with the appraisal request filed by Mr. Vise on your behalf on the various claims?"

**May 30, 2012 email from David Brown to Flint Cox**: "I am responding to our string of email regarding the damages and appraisal. Based on your response, we are interpreting that you do not really want to proceed at this time. With that thought in mind, we propose the following in an attempt to resolve. We believe it is worth the effort to set a date to meet, reinspect and see if we can reach a resolution. However, prior to any meeting we want a detailed list of each property in which you feel there is damage and the issues you believe are storm related. We are not asking for an estimate of repair prepared by a third-party. We want your assessment. We understand you will be relying on people that are familiar with construction and damages. We will require both your and their presence at any inspection. This list will serve as our worksheet for the reinspection. If we do not receive this list by July 1, 2012, we will assume you are not interested in our proposal. At that point, we will make our appraiser appointment and proceed with appraisal."

**July 5 email from David Brown to Flint Cox**: "since we received no response to our proposal on July 1, 2012, we are going to proceed with the appraisal process. We will be sending you the information concerning our appraiser in the near future."

**July 6, 2012 email from David Brown to John Chianese** : "we had no response from the insured to their last proposal for resolution before appraisal. We are now proceeding with the appraisal process. Attached are the appraisal forms for you to sign as acceptance of being named appraiser. We will forward the supporting claim information after receipt of the signed form."

**August 12 2012-Email exchange**: Since it has been sometime since Mr. Vise presented the name of your appraiser, we wanted to verify. Is Lewis O'Leary your appraiser? **Mr Cox replies**: "I will call you tomorrow."

**September 14, 2012 Email from David Brown to Flint Cox**:"Since we have not heard from you, we are proceeding with the appraisal. We will be sending you the name of our appraiser and the appraisal forms in the near future."

19.  The defendants, therefore, did not invoke the appraisal clause of the insurance contract. The defendants at no time invoked the appraisal process in the contract of insurance. When pushed to invoke an appraisal the defendants were non responsive.

20.  The plaintiffs attempted to resolve the issues regarding the claim as evidenced by the emails outlined herein.  After receiving no response to its communications the plaintiffs invoked the appraisal process by sending a form for Submission to Arbitration to the plaintiffs involving each of the properties.

The Agreement provided for the invocation of the policy appraisal provisions and an appointment of an appraiser. Additionally, the agreement expanded the terms and conditions of the appraisal provisions in the policies of insurance.

The agreements were sent involving the following properties:

Flint and Kay Cox-Central Insurance Companies Agreement for Submission to Appraisers (Commercial) sent on October 4, 2012

Paradise LLC-All America Insurance Companies.  Agreement sent on the same date.

McCarver LP Central Insurance Companies.  Agreement sent on the same date.

CCM Associates LLC Central Insurance Companies.
Agreement sent on the same date.

None were signed and returned by the defendants to the plaintiffs. See Exhibit 5. Therefore, if the appraisal process were to move forward it would move forward pursuant to the terms and conditions of the policy of insurance regarding appraisals.

20. Regardless, O'Leary opened up a line of communications with the Central appraiser as appointed in Exhibit 5.  During the course of communications O'Leary and Central's appraiser, Chianese, communicated regarding the appointment of an umpire. There were no communications regarding the additional terms suggested in Exhibit 5.

21.  Despite not signing Exhibit 5 nor otherwise formally invoking the appraisal provisions of the policy, the defendants filed a petition asking the Madison County Chancery Court to appoint an umpire pursuant to the terms and conditions of the applicable policies of insurance despite knowing that they had not agreed to the invocation of the process.  Neither the defendants nor O'Leary informed the Court about Exhibit 5 and their failure to sign the same. The defendants did not request an appraisal after refusing to sign Exhibit 5 with the exception that Lewis O'Leary and John Chianese (the plaintiffs' appraiser)

communicated regarding the appointment of an umpire pursuant to the terms and conditions of the policy of insurance.

22.  The Madison County Chancery Court appointed an umpire. However, the appointment was never filed with the Clerk and Master's office as evidenced by the answers filed to the complaints in the Chancery Court.

23.  After learning of the appointment, the plaintiffs attempted to file an objection. However, there was no Court record of the appointment and, therefore, the objection could not be filed with or heard by the Madison County Chancery Court.

24. Subsequent to the appointment, the lawsuits attached as Exhibit 1 were filed and the trial court reaffirmed the appointment of the umpire entering the order attached as Exhibit 6. After the reaffirmation of the appointment of the umpire, the plaintiffs amended the Chancery Court answers.

25.  The various complaints filed in the Chancery Court of Madison County contained largely the same allegations. The causes of action include:

a. Breach of contract alleging that the plaintiff is in material breach of the policy and liable to the defendant under the policy for the loss. The allegation states that the plaintiff is in breach for its failure and refusal to pay all of the defendant's losses that were covered under the terms of the policy. Additionally,

the complaint alleges that the defendant suffered substantial compensable losses.
The complaint seeks economic loss, loss of income, loss of use of personal
property, travel, and damages including incidental and consequential damages.

b. The complaint also seeks damages for violation of the Tennessee
Consumer Protection Act as codified in Tenn. Code Ann. 47-18-101, 104 (27). The
complaint alleges that the plaintiff intentionally failed to process the defendants
claim in a prompt fashion to the benefit of the plaintiff and the detriment of the
defendant, that the plaintiffs method of investigation of the claim resulted in a
delay of adjusting the defendants claim and was for the sole purpose of denying the
legitimacy of the claim without a good faith reason for the delay, and that the
plaintiff failed to properly adjust the defendants claim and pay the insured losses.

26. The Chancery Court complaint does not seek a declaration of rights
between the parties, and interpretation of the contract provisions, determination as
to causation, or an interpretation of the coverage provisions of the policies of
insurance. The plaintiffs have asked the Court to invoke appraisal and an order on
appraisal has been entered by the Madison County Chancery Court.

27. The plaintiff did inform the defendants as evidenced by Exhibit 7 of
coverage issues involved in the claim prior to the filing of the lawsuit. However,
the defendants have not sought an interpretation of the contract provisions

including the coverage issues contained in Exhibit 7 or a reasonable interpretation of the appraisal provisions of the policy of insurance.

## ALLEGATIONS SUPPORTING THE PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF.

28.  Lewis O'Leary, the appraiser for the defendants, proceeded to have email discussions with John Chianese, the defendants duly appointed appraiser, regarding the appointment of an umpire. However, O'Leary did not have the authority to invoke the appraisal provisions of the contracts of insurance or to sign the Submission to Appraisers (Commercial) contract that was sent to the defendants until such time as the defendants signed the Submission attached as Exhibit 7 hereto or the defendants invoked the appraisal provisions of the policy. Moreover, only the defendants can invoke the appraisal provisions.

As an experienced appraiser, O'Leary should have known, or did in fact know, that his authority is limited by the Submission to Appraisers and that the defendants should have signed, giving him authority to sign Exhibit 5 and act in accordance with its terms and conditions. Therefore, at no time was O'Leary acting with appropriate authority because that authority was never granted by the defendants by signing the Submission to Appraisers contract as invoked by the plaintiffs. There is no evidence that the defendants otherwise appropriately invoked

the appraisal provisions of the contract of insurance after not signing and returning the appraisal forms attached as Exhibit 5.  However, O'Leary and Chianese did have discussions regarding the appraisal process and the appointment of an umpire. During those discussion neither had performed an appraisal outside of the reports generated as to causation from the forensic engineers hired by the plaintiffs.

29.  The defendants allege that prior to the appointment of an umpire the defendants would have to sign the Submissions to Appraisers (Commercial) contract before proceeding with the appraisal process or formally invoke the appraisal provisions contained in the insurance policy. Additionally, the defendant's appraiser, Lewis O'Leary, would have to sign the Submission to Appraisers (Commercial) before the appraisal process was completed and before verification of the umpire. Neither the defendants nor their appraiser signed the submission as reflected in Exhibit 5. Therefore, the conduct of the appraisers would have to be imputed to the plaintiffs and the defendants.  Moreover, if that conduct is imputed to the defendants, then only the policy provisions of the contract of insurance regarding the appraisal process govern the appraisal. Consequently, the policy provisions apply without the expanded language contained in Exhibit 5.

30.  The defendants never responded to the string of emails outlined in this Declaratory Judgment Action affirming that they were going to submit to the appraisal process. The defendants, therefore, waived their right to appraisal because the defendants did not comply with the terms and conditions of the policy, nor did they formally accept the terms and conditions of the appraisal process itself before filing suit or requesting the Chancery Court to appoint an umpire.

31. Moreover, Lewis O'Leary made attempts to have an umpire appointed without having been given the authority to do so, as the defendants never signed the Submission to Appraisers or informed the plaintiffs that they wanted to pursue appraisal under the policy of insurance. Moreover, the plaintiffs assert that the failure to sign or to return a signed copy of Exhibit 5 to it shows that the defendants never properly invoked the appraisal process and are barred from doing so since the defendants never accepted the terms and conditions of Exhibit 5 or invoked the appraisal provisions in the policy of insurance.

32. O'Leary knew, or should have known, that he is not permitted to act without proper execution of the submission contract attached hereto as Exhibit 5, or pending notification by the defendants to the plaintiffs that they were invoking the policy provisions on appraisal.  Consequently, O'Leary's actions as an appraiser to seek the appointment of an umpire are void.

15

33.  Moreover, O'Leary never executed the contract agreeing to abide by the terms and conditions governing the appraiser's conduct.  Further, O'Leary presented an Affidavit to a Court of Law while he knew, or should have known, that the appraisal submission form was not executed by the defendants. Therefore, O'Leary's actions and any subsequent actions appointing an umpire are void because the appraisal submission contract, the document governing the conduct of the parties as proposed by the plaintiffs, was never accepted by the defendants.  If it is found that O'Leary acted with authority from the defendants, then the appraisal provisions of the policy of insurance apply without modification by either the plaintiffs or the defendants. Consequently, the policy would govern the conduct of the appraisal process.

34. The plaintiffs assert that the defendants wrongfully sought the appointment of an umpire from the Chancery Court of Madison without revealing to the Chancery Court that the defendants had not signed the Submission to Appraisers (Commercial) contract and that the defendants had not acquiesced to the appraisal process. Such acquiescence pursuant to the terms and conditions of the submission are a condition precedent to appraisal formally moving forward. Moreover, the nature of the language of the policy envisions prior notice to be

given on Court action and prior notice to be given on an appraiser's feeling that an impasse exists requiring a Court to appoint an umpire.

35.  An appraiser may not, under the contract of insurance or under the agreement, act as an agent for binding the insured to the terms and conditions of the form or the policy of insurance. The appraiser is limited to assisting in determining the value of the loss and the appointment of an umpire to help with determining value as described in the policy of insurance.

36.  The contracts for insurance each contain an appraisal provision.  The provision states in pertinent part:

> *"Appraisal... If we and you disagree on the value of the property or the amount of loss, either **may** make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either **may** request that selection be made by a judge of a court having jurisdiction." (emphasis added)*

The plaintiffs assert that the appraisal process is for the sole purpose of determining the value of the loss should the insurance carrier and the insured disagree on the amount or value of the loss and what is to be paid on the loss.  The appraisal process is not designed to determine issues of causation or coverage, it is a value only provision in the contract of insurance. Therefore, the plaintiffs assert that the appraisal process called for in the policy of insurance does not provide for

an appraisal process if there is an issue as to whether a loss is covered or caused by the event claimed by an insured under the applicable policy of insurance. Before undergoing appraisal all issues as to causation and coverage should be resolved, unless otherwise agreed to by the parties.

Umpires, when properly appointed, are to only determine the value of a loss once causation has been determined and coverage issues are resolved. Moreover, the appraisal provisions are non binding and not mandatory as either party "may" invoke the provisions.  Moreover, the appraisal process is a non-binding process subject to court review.

37.  The plaintiffs allege that either an insured or a carrier may invoke the appraisal provisions of the policy of insurance. The plaintiffs further allege that the parties are free to agree to an appraisal process that includes additional terms as to the scope of the appraisal and umpire appointment process.  The plaintiffs allege that they presented a proposal for appraisal that was not signed or agreed to by the defendants containing additional terms and conditions regarding appraisal evidenced by Exhibit 5.  Therefore, by failing to agree to the proposal or to formally suggest changes to the appraisal process the defendants did not appropriately invoke the appraisal process and waived the right to appraisal by filing a lawsuit in the Chancery Court of Madison County.  As such, the appraisal

provisions were not invoked by the defendant, and the defendant cannot now invoke the appraisal process as either set forth in Exhibit 7 or in the contracts of insurance attached as Exhibit 2. Moreover, the appraisal provisions state "*If we and you disagree on the value of the property or the amount of loss…*" then the insured and the carrier **may** invoke the appraisal provisions.  By the language of the policy itself the appraisal provisions may be invoked by the insured or the carrier. Moreover, the appraisal provisions may be invoked regarding the value of the property or the amount of the loss only. The appraisal provisions do not deal with issues of causation or coverage unless otherwise agreed to by the parties by invoking supplemental provisions which the plaintiffs attempted to do in Exhibit 5 but were never accepted by the defendants until after litigation was filed.

38.  The plaintiffs assert that the appraisal provisions of the contract of insurance do not prevent either an insured or insurance carrier from filing legal claims to review the results of the appraisal process or the umpire's decisions as to value of the property or the amount of the loss or as to the scope of any appraisal as defined by the parties by agreement in addition to the policy provisions.

39. The plaintiffs assert that the parties are free to negotiate any additional terms as they see fit and that the appraisal process does not prevent the parties from

entering into additional terms and conditions as the plaintiffs attempted to do in Exhibit 5.

40.  The plaintiffs further assert that the defendants did not appropriately invoke the appraisal provisions of the applicable policies of insurance. Rather, the plaintiffs invoked the appraisal provisions and proposed expanding the scope of the appraisal process.  The proposal was never amended or accepted by the defendants. In fact the defendants did not properly invoke the appraisal provisions under the policy of insurance.

41.  The plaintiffs engaged the services of two forensic engineers who stated that the damages were not caused by or contributed to by the storm damages claimed by the defendants. Consequently, issues exist as to whether the damages claimed are caused by wind damage and, therefore, are covered by the policy of insurance. There is also an issue as to whether any partial damage, if it exists, requires bringing the buildings up to code, and whether such coverage exists under the policy of insurance.

42. The plaintiffs put the defendants on notice of a reservation of rights and coverage issues as evidenced by Exhibit 7. The issues surrounding the reservation of rights and, moreover, the coverage issues raised in Exhibit 7 remain at issue and have not been alleged as an issue in the complaint filed by the defendants in the

Chancery Court of Madison County Tennessee. Consequently, Central asserts that the damages claimed are not within the scope of damages covered by the policy of insurance. Therefore, this court should declare the rights of the parties as to all coverage issues regarding what is or is not covered under the policy of insurance and whether the damages are caused by an event that would be covered under the policy of insurance. Such a determination would help resolve the issues of the complaint filed by the plaintiffs in the Madison County Chancery Court.

43. Therefore, the plaintiffs request a declaration of rights as to the scope and effect of the appraisal provisions of the policy of insurance.  The issues upon which we request the court's determination include: (a) whether an appraisal provision can be invoked prior to issues of coverage and causation being resolved under the policy of insurance, and  (b) whether the damages resulting from the claimed storm loss is covered by the policy of insurance, caused by the subject storm, or whether said damages are, in fact, covered under the policy of insurance in light of the severe maintenance issues that exist in each of the buildings.

Wherefore the plaintiffs request a jury to determine the respective rights of the parties and to determine that:

1.   The appraisal provisions of the policies of insurance attached hereto as

Exhibits 2-5 provide for an appraisal process when an insured and a carrier cannot agree as to the value of the loss;

2.  That the appraisal provisions are designed to determine the value of a loss only after causation and coverage issues are resolved, and that the appraisal process is not designed to determine either causation issues or coverage issues absent an agreement by the parties to include such issues in the appraisal process.

3.  That the appraisal process is subject to court review by either party to a contract of insurance

4.  That Exhibit 5 attached hereto invoked the appraisal process and included additional terms and conditions that were never accepted by the defendants making Exhibit 5 inapplicable to the appraisal process;

5.  That the defendants never appropriately invoked the appraisal provision of the contract of insurance, and by filing their lawsuit waived any right they had to invoke the appraisal provisions of the contracts of insurance. Moreover, that only the plaintiffs or the defendants herein have the authority to invoke the appraisal provisions as stated in the policy of insurance.

6.  That the defendants improperly sought court intervention regarding the appointment of an umpire under the policy language as the defendants did not agree to the appraisal process, did not appropriately appoint Lewis O'Leary as an

appraiser, and did not properly execute, and/or modify any of the language contained in Exhibit 5. Moreover, the defendants never invoked the appraisal provisions of the policy of insurance

   8.  That the actions of the defendants are not in accordance with the appraisal provisions of the policy of insurance and that the defendants did not comply with the policy of insurance in their course of action involving the claims filed with the plaintiffs.

   7.  The defendants never invoked the appraisal provisions.  Moreover, by failing to sign the agreement and subsequently failing to request an appraisal pursuant to the policy of insurance, the defendants had not properly invoked the appraisal provisions by providing notice to the plaintiffs of the desire to appraise the property.  An appraiser, such as O'Leary, does not have the authority to invoke the appraisal provisions of the policy of insurance as the invocation of the provisions are limited to the insured or the insurance carrier.  However, if the conduct of the parties after the defendants' refusal to invoke the provisions in Exhibit 7 constitute an invocation of an appraisal process, then that process must be conducted pursuant to the terms of the policy of insurance and not Exhibit 5.

   8. That the appraisal provisions of the policy of insurance provide "*…each party will select a competent and impartial appraiser. The two appraisers will*

*select an umpire. If they cannot agree, either may request that selection be made*

*by a judge of a court having jurisdiction."* That the policy requires the appointment

of a competent and impartial appraiser by the insured and the carrier.  That the

policy requires the appraisers to select an umpire.  That, after proper notice, either

party may request a court to appoint an umpire in the event the appraisers cannot

agree on an umpire.  That the policy envisions proper notice be given of the

disagreement and that notice be given if a Court action is filed regarding the

selection of an umpire.  That said request be filed in a Court of law and that there is

no provision preventing a party from filing an objection if warranted when Court

intervention is requested.

9.  That a declaration of rights be determined as to whether the damages

claimed under the policy of insurance are covered by the terms and conditions of

the policy of insurance.  Further, the plaintiffs request a determination as to

whether the defendants are afforded coverage pursuant to the terms and conditions

of the policy of insurance regarding the damages claimed, particularly in light of

maintenance issues existing on each building, and in light of the causation issues

hinging on whether the damages are due to maintenance problem or to damages

related to storm damage  covered under the provisions of the policy of insurance.

10.  That the plaintiffs be granted such other general or specific relief that they may be entitled to by law.

Respectfully Submitted,

JAMES, GOINS & CARPENTER

*/s/ Stuart F. James*
STUART F. JAMES, BPR #013841
Attorneys for Plaintiffs
735 Broad Street, Suite 908
Chattanooga, TN  37402
Phone:  (423)756-3646