# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| **MIDDLESEX INSURANCE COMPANY,** | § § § | |
| **Plaintiff,** | § § | |
| vs. | § § | CASE NO.: 2:21-cv-02524-JTF-cgc |
| **COX'S PARADISE, LLC,** | § § § | |
| **Defendant.** | § | |

## RESPONSE IN OPPOSITION TO MOTION TO VACATE APPRAISAL AWARD AND TO ABATE

COMES NOW Middlesex Insurance Company ("Middlesex") and, in response in opposition to Cox's Paradise, LLC's ("Cox's Paradise") Motion to Vacate Appraisal Award and to Abate ("Motion to Vacate") [Doc. 84, Doc. 84-1], states as follows:

I.  **Introduction.**

The Motion to Vacate is due to be denied because the appraisal panel did not exceed the scope of its authority. Cox's Paradise submitted an insurance claim for storm damage, requested appraisal to determine the amount of loss for that storm damage, and the appraisal panel determined that the amount of loss for storm damage was $0.00. In arriving at this decision, the appraisal panel did not engage in improper coverage determinations or exceed the scope of its review; rather, the appraisal panel correctly and properly sought to identify only the amount of loss for storm damage, which was the claim submitted by Cox's Paradise. Courts addressing this very issue, including courts in this District, have found that there is some necessary overlap in causation and valuation, such that appraisal panels are entitled to, and need to, ascertain exactly

what is being appraised. Therefore, as explained in more detail below[1], the appraisal award was proper, and the Motion to Vacate is due to be denied.

## II. Pertinent Facts.

As noted, Middlesex has filed a Motion for Summary Judgment. *See* p. 2 n.1. The Motion for Summary Judgment is accompanied by a Statement of Undisputed Facts. [Doc. 86-1]. The Statement of Undisputed Facts provides a thorough background of the insurance claim and other issues related to this litigation, and the Statement of Facts is incorporated as if fully set forth herein. For purposes of responding to the Motion to Vacate, Middlesex sets forth the following pertinent facts:

1. The Appraisal Condition at issue in this litigation states:

   **E.    Loss Conditions**

   The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

   . . .

   **2.    Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.**    Pay its chosen appraiser; and

---

[1] Middlesex has also filed a Motion for Summary Judgment seeking to enforce the appraisal award. [Doc. 86; Doc. 86-1 to 86-12]. Because the arguments set out therein apply in opposition to the Motion to Vacate, Middlesex incorporates those arguments as if fully set forth herein.

> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

[Doc. 86-3, p. 36 of 105, PageID.326; Doc. 86-2, p. 39 of 95, PageID.434].

2. Cox's Paradise submitted a Property Loss Notice that stated: "Insured contractor has reported wind and hail damages." [Doc. 86-5, p. 1 of 3, PageID.491].

3. Cox's Paradise submitted a Sworn Statement in Proof of Loss that identified a "windstorm" as the cause of loss. [Doc. 86-8, p. 1 of 1, PageID.501].

4. Cox's Paradise's Counterclaim Complaint alleged that "a certain severe weather event which included extremely high velocity wind and hail" occurred at the subject property. [Doc. 14, p. 7 of 12 ¶ 5, PageID.41].

5. Cox's Paradise's Unopposed Motion to Compel Appraisal sought "an Order compelling the parties to proceed with an appraisal of the loss . . . ." [Doc. 43, p. 1 of 3, PageID.116].

6. On April 11, 2025, the appraisal panel completed the appraisal, and the court-appointed umpire provided the parties with his decision. [Doc. 86-11]. The umpire stated, in pertinent part:

> **Carrier's Appraiser Position:** Dan Connell conducted an on-site inspection and provided a Roof Assessment Report. This report details observed deficiencies, including improper installation and prior repair attempts, predating the date of loss and supported by aerial imagery analysis. Mr. Connell's professional opinion concluded that the roof did not sustain wind or hail damage directly attributable to the June 5, 2020, event. Mr. Connell maintained his position throughout this process, reiterating that the failure of the seams prematurely is a result of improper installation and repair attempts and not a consequence of wind on the date in question.
>
> **Insured's Appraiser Position:** Vine Perri did not provide any authored report and/or typical narrative position. However, he provided documentation via a Google Drive link, including photographs, reports, invoices, the insurance policy, proof of loss, and multiple estimates, including a contractor repair estimate

> exceeding $6.7 million. Mr. Perri verbally communicated in our onsite meeting a position that "if" wind had lifted the seams and water got in, then the replacement of the roof should be considered. Mr. Perri mentioned several times (in reference to Mr. Connell's stance on the seams) in our in-person meeting that what we were looking at was "subjective". It appeared that Mr. Perri was alluding to the fact that if the seams were exacerbated due to wind, then any damages resulting from it should be considered.

[Doc. 86-11, pp. 2-3 of 6, PageID.541-42].

    7.     The umpire reached the following conclusion:

> The positions of the two appraisers in this matter are very different as Dan has documented in his assessment that damages due to the loss did not occur on the date in question and are merely pre-existing deficiencies due to improper installation. Vince has presented a lot of information contained in a Google Drive folder, and from our in-person meeting is of the opinion that "if" wind had lifted the seams and water got in, then the roof should be considered. Typically, there is an estimate along with a narrative received from both parties that coincides with one another, supporting their position. With the information presented, one could only assume that Dan is at $0.00 in this scenario, and Vince is at $6,777,440.76. In order to determine an ACV/RCV number to award a thorough review of the evidence presented, including photographic documentation, expert reports, weather data, and consideration of industry standards, a determination was made that the evidence does not support that the building sustained damage directly attributable to the windstorm event on June 5, 2020; therefore, I have issued a zero-dollar award based on this. Please find the attached award; I will need at least one, if not both parties, to sign and date as well as send back for a counter signature.

[Doc. 86-11, p. 5 of 6, PageID.544].

    8.     That same day, the umpire submitted and signed the Appraisal Award. [Doc. 86-12, p. 1 of 1, PageID.546]. Middlesex's appraiser also signed the Appraisal Award. [Doc. 86-12, p. 1 of 1, PageID.546].

    9.     The Appraisal Award identified $0.00 as the amount of loss for Cox's Paradise storm damage claim. [Doc. 86-12, p. 1 of 1, PageID.546].

### III.   The Appraisal Award Is Proper And Due To Be Enforced.

Appraisal provisions like the one at issue in this case are clear and unambiguous. *See, e.g., First Choice Prop. & Dev., LLC v. Travelers Personal Ins. Co.*, 2021 WL 3924072, at *4 (W.D.

Tenn. Sept. 1, 2021). Under Tennessee law, a party is "not entitled to disregard the policy's expressed intent and contest the appraisers' findings" if the appraisal panel does not exceed its authority. *Thomas v. Standard Fire Ins. Co.*, 2016 WL 638559, at *6 (Tenn. Ct. App. Feb. 17, 2016). Where an insurance policy provides that any appraisal award signed by two of the three members of the appraisal panel is binding, any such award that is so signed becomes binding on the parties as to the amount of loss. *See, e.g., Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 218-20 (Tenn. Ct. App. 2013) (discussing appraisal award and finding that appraisal award was binding where appraisal panel determined amount of loss). Therefore, as long as the appraisal panel does not exceed its authority, the appraisal will set the amount of the loss, and any award signed by two of the three members of the appraisal panel will be binding as to the amount of the loss.

Here, the parties entered appraisal to determine the amount of storm damage at the subject property. The appraisal proceeded, an umpire was appointed, and two of the three members of the appraisal panel signed a $0.00 appraisal award. In reaching his decision, the umpire found that "a determination was made that the evidence does not support that the building sustained damage directly attributable to the windstorm even of June 5, 2020 . . . ." [Doc. 86-11, p. 5 of 6, PageID.544]. Therefore, the $0.00 appraisal award is binding as long as the panel did not exceed its authority.

Cox's Paradise seeks to avoid the appraisal award by arguing that the panel exceeded its authority. However, appraisal panels are entitled to identify exactly what they are appraising, and only appraise the damage at issue in a particular insurance claim. Although it is true that "appraisers have no power to decide coverage or liability issues[,]" "questions of coverage, causation, and liability are often intertwined with the question of the amount of loss involved."

*Khushi Partnership v. Berkshire Hathaway Homestate Ins. Co.*, 2023 WL 186863, at *3 (M.D. Tenn. Jan. 13, 2023) (quoting *Merrimack Mut. Ins. Co. v. Batts*, 59 S.W.3d 142, 152-53 (Tenn. Ct. App. 2001)). As another court in this District has recognized:

> This case, and others, highlight that there is some element to an appraisal that includes causation when determining the amount of loss. As the Middle District of Tennessee pointed out in a similar case, "[w]hen asked to assess hail damage, appraisers look only at damage caused by hail; they do not consider leaky faucets or remodeling the kitchen. . . . [S]etting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else."

*Cox Paradise, LLC v. Erie Ins. Exchange*, 2023 WL 11985250, at *3 (W.D. Tenn. May 5, 2023) (quoting *Khushi Partnership*, 2023 WL 186863 at *5).

Although *Khushi Partnership* and *Cox Paradise* concern whether to compel appraisal in the first place, the cases are instructive in setting out the scope of appraisals. The *Khushi Partnership* Court expounded on the overlap between coverage and valuation when it discussed, with authority, *State Farm Lloyd's v. Johnson*, 290 S.W.3d 886 (Tex. 2009), from the Texas Supreme Court. In *State Farm Lloyd's*, the Texas Supreme Court noted that there is almost always some overlap between valuation and causation, at least at the beginning of the appraisal process, because appraisal is a procedure by which the parties determine the amount of loss for a specific cause of damage:

> [A]ppraisers must always consider causation, at least as an initial matter. An appraisal is for damages caused by a specific occurrence, not every repair a [covered property] might need. When asked to assess hail damage, appraisers look only at damage caused by hail; they do not consider leaky faucets or remodeling the kitchen. When asked to assess damage from a fender-bender, they include dents caused by the collision but not by something else. Any appraisal necessarily includes some causation element, because setting the "amount of loss" requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else.

*Khushi Partnership*, 2023 WL 186863 at *5 (quoting *State Farm Lloyd's*, 290 S.W.3d at 893).

Relying on *State Farm Lloyd's*, the Texas Court of Appeals dealt with an identical situation to the one in this case – a $0.00 appraisal award for a storm damage claim. *See In re Auto Club Indem. Co.*, 580 S.W.3d 852 (Tex. Ct. App. 2019). In *Auto Club*, the insurer, Auto Club Indemnity Company ("AAA"), issued a homeowners insurance policy to the insureds, Angie and Jay Lee (the "Lees"). *Auto Club*, 580 S.W.3d at 853. The Lees sought coverage from AAA for a loss to their home and demanded appraisal. *Id.* AAA did not agree to appraisal, and the Lees filed suit for breach of contract and demanded appraisal. *Id.*

AAA argued that any interior damage to the Lees' home due to windstorm, hurricane, or hail was not covered unless the damage was caused by water entering through a storm-created opening, but that AAA did not observe any storm-related openings during its inspection of the property. *Id.* at 854. Instead, AAA argued that during its investigation, it found damage to the roof was caused by wear and tear, damage because of a tree limb rubbing on the roof, an open nail hole, and deteriorated masonry at the base of the chimney (which was situated in the vicinity of interior water damage). *Id.* After the lawsuit was filed, the trial court granted the Lees' motion to compel appraisal. *Id.* The parties selected appraisers, and the appraisers appointed an umpire. *Id.* AAA's appraiser and the umpire signed an appraisal award that stated:

> [The umpire] met with the Appraisers and inspected the roof and exterior of risk. [The umpire] found NSR [no storm-related] damages to the risk due to hail or wind that would warrant replacement. Note that the area damaged by water intrusion is due to the flashing that has been improperly installed. The flashing is loose and not caulked properly, allowing water intrusion when it rains. We also documented the rear slope on garage, showing damages due to tree rub.
>
> [The umpire] documented the interior of the risk and found damage due to water intrusion around chimney crown cap (mortar cracked due to age) and improper flashing. We also noted settlement issues within the home.

*Id.* The appraisal award "found the actual cash value and replacement cost of the loss to be $0 and awarded $0." *Id.* The trial court set aside the appraisal award, and AAA appealed. *Id.*

On appeal, the Lees argued that the appraisal panel "acted outside the scope of their authority by rendering coverage decisions instead of determining the amount of the loss, and that is shown by the fact that they awarded $0, even though they found damage to the house." *Id.* at 855. The court noted that "[i]mplicit in the Lees' argument is that appraisers lack authority to determine whether the damages pre-existed the storm or were caused by pre-existing conditions." *Id.* at 855-56. The Texas Court of Appeals disagreed with the Lees and vacated the trial court's order vacating the appraisal. *Id.* at 858.

In doing so, the court relied heavily on *State Farm Lloyd's*, which stated that "the scope of appraisal is damages, not liability." *Id.* at 856 (quoting *State Farm Lloyd's*, 290 S.W.3d at 890). "But '[e]ven if the parties' dispute involves causation, that does not prove whether it is a question of liability or damages.'" *Id.* (quoting *State Farm Lloyd's*, 290 S.W.3d at 891). The court quoted extensively from *State Farm Lloyd's* in reaching its decision:

> In the abstract, it is hard to say whether causation is more a question of liability or damages.
>
> But in actual cases, causation usually falls into one category or the other. Thus, when different causes are alleged for a single injury to property, causation is a liability question for the courts. For example, in *Wells v. American States Preferred Insurance Co.* [919 S.W.2d 679 (Tex. App.-Dallas 1996)], appraisers assessed foundation damage due to plumbing leaks (a covered peril) as "0" but damage due to settling (an excluded peril) as $22,875.94[]. The Dallas Court of Appeals set aside the appraisal, holding appraisers could decide the amount of damage but not what caused it. Appraisers can decide the cost of repairs in this context, but if they can also decide causation there would be no liability questions left for courts.
>
> By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability. . . .
>
> **The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition**. Wear and tear is excluded in most property policies (including this one) because it occurs in every case. If State Farm is correct that appraisers can never allocate damages between covered and excluded perils, then appraisals can never assess hail damage unless a

> roof is brand new. That would render appraisal clauses largely inoperative, a construction we must avoid.
>
> **Indeed, appraisers must always consider causation, at least as an initial matter**. An appraisal is for damages caused by a specific occurrence, not every repair a home might need. **When asked to assess hail damage, appraisers look only at damage caused by hail**; they do not consider leaky faucets or remodeling the kitchen. When asked to assess damage from a fender-bender, they include dents caused by the collision but not by something else. **Any appraisal necessarily includes some causation element, because setting the "amount of loss" requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else**.

*Id.* (quoting *State Farm Lloyd's*, 290 S.W.3d at 892-93) (emphasis in original). "Our court has interpreted [*State Farm Lloyd's*] as recognizing that: (1) appraisals necessarily include a causation element because setting the amount of loss requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else, and (2) appraisers may separate loss due to a covered event from a property's pre-existing condition." *Id.* (citing *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 276 (Tex. Ct. App. 2018)).

The *Auto Club* Court also cited to courts from the Southern District of Texas and the Fifth Circuit Court of Appeals, noting that "[f]ederal courts likewise interpret [*State Farm Lloyd's*] as holding that appraisers act within their authority when they distinguish damage caused by pre-existing conditions from damage caused by the storm." *Id.* at 857 (citing *TMM Investments, Ltd. V. Ohio Cas. Co.*, 730 F.3d 466, 474-75 (5th Cir. 2013) and *MLCSV10 v. Stateside Enters., Inc.*, 866 F. Supp. 2d 691, 705 (S.D. Tex. 2012)).

Based on *State Farm Lloyd's* and the federal cases discussed above, the *Auto Club* Court held that the appraisal panel had the authority to differentiate between storm damage and pre-existing conditions, and found that the $0 appraisal award was enforceable and binding:

> In the appraisal award, [the umpire and AAA's appraiser] found only damages that were pre-existing or caused by pre-existing conditions, such as improperly installed flashing, tree rub, and mortar cracked due to age. As the Texas Supreme Court held

> in [*State Farm Lloyd's*], [the umpire and AAA's appraiser] had authority to determine, as they did, whether the damages they found were pre-existing or caused by a pre-existing condition. The appraisal award does not show that [the umpire and AAA's appraiser] acted outside the scope of their authority.
>
> Because the record contains no evidence that the appraisal award was a result of fraud or was made without authority, we conclude that the trial court failed to correctly apply the law to the facts and clearly abused its discretion by setting the appraisal award aside.

*Id.*

Middlesex previously referred to *Auto Club* as persuasive authority [Doc. 86-2, p. 14 of 19 n.4, PageID.285], but that description does not fully explain the significance and importance of *Auto Club* to the present litigation. First, *Auto Club* is based on *State Farm Lloyd's*, a case cited with authority in *Khushi Partnership* in Tennessee. Second, and perhaps most importantly, it is almost factually indistinguishable from the present case. Like Middlesex's appraiser here, the insurer's appraiser in *Auto Club* contended that there was no storm damage at the subject property, and any damage was pre-existing. And like the umpire here, the umpire in *Auto Club* agreed that there was no storm damage and issued a $0.00 appraisal award. Thus, like in *Auto Club*, the appraisal panel here "had authority to determined, as they did, whether the damages they found were pre-existing or caused by a pre-existing condition." *Auto Club*, 580 S.W.3d at 857.

Based on the authority set out above, the appraisal panel here acted within the scope of its authority. Cox's Paradise moved to compel appraisal to determine the amount of storm damage loss, the appraisal panel engaged in the appraisal process to determine the amount of this loss, and two of the three members of the appraisal panel agreed that the amount of loss for storm damage was $0.00. In doing so, the panel did not engage in coverage or liability determinations. The appraisal award does not make any statements or determinations as to whether coverage exists, does not make any statements regarding covered or excluded losses, and does not make any

determinations as to what caused any alleged leaking or other damage at the property. Instead, the appraisal award merely found that there was no storm damage at the property.

Cox's Paradise argues that the appraisal panel decided on its own what to appraise. [Doc. 84-1, p. 9 of 12, PageID.243]. This argument misconstrues Cox's Paradise's own submissions during the claim and own allegations in this lawsuit, and fails to take into account the umpire's explanation for his award. The umpire clearly stated that the purpose of the appraisal was to resolve "the disputed claim based on the differences of the alleged damages resulting from a windstorm event on June 5, 2020" at the subject property. [Doc. 86-11, p. 2 of 6, PageID.541]. This statement falls in line with Cox's Paradise's own statements and submissions during the claim and during the litigation.

To initiate the claim, Cox's Paradise submitted a Property Loss Notice identifying "wind and hail damage" as the cause of loss. [Doc. 86-5, p. 1 of 3, PageID.491]. During the claim investigation, Cox's Paradise submitted a Sworn Statement in Proof of Loss that identified "windstorm" as the cause of loss. [Doc. 86-8, p. 1 of 1, PageID.501]. When it filed is Counterclaim Complaint, Cox's Paradise alleged that the property suffered wind and hail damage from a severe storm. [Doc. 14, p. 7 of 12 ¶ 5, PageID.41]. When moving to compel appraisal, Cox's Paradise sought "an appraisal of the loss . . . ." [Doc. 43, p. 1 of 3, PageID.116].

Therefore, Cox's Paradise submitted a claim for wind and/or hail damage as the result of a storm, filed the Counterclaim Complaint based on that claimed loss, and then sought an appraisal of that loss. Therefore, the appraisal panel was clearly appraising the amount of loss as the result of alleged storm damage. As noted, the umpire even clearly stated that the purpose of the appraisal was to resolve "the disputed claim based on the differences of the alleged damages resulting from a windstorm even on June 5, 2020" at the subject property. [Doc. 86-11, p. 2 of 6, PageID.541].

Therefore, the appraisal panel conducted an appraisal on the amount of loss for alleged storm damage, at Cox's Paradise's request, and did not create its own scope of appraisal or decide on its own what exactly to appraise.

Cox's Paradise cites a number of cases in the Motion to Vacate, most of them for the proposition that causation and liability are not proper determinations for the appraisal process. However, Cox's Paradise cites four cases in particular for which it provides substantive discussions. Those cases are distinguishable and do not support Cox's Paradise's argument that the appraisal award should be vacated. First, Cox's Paradise cites *High Country Arts & Crafts Guild v. Hartford Fire Ins.*, 126 F.3d 629, 634 (4th Cir. 1997), for the proposition that parties are not bound by coverage determinations in appraisal awards. While that statement is generally correct (along with the additional considerations discussed above), what the *High Country* Court found was that the parties were not bound by the appraisal panel's determination regarding "coverage period questions," where the appraisal panel determined that the policy at issue only provided for 60 days of business interruption coverage. *High Country*, 126 F.3d at 634. Thus, in *High Country*, one of the issues that the Fourth Circuit dealt with was whether the appraisal award improperly limited the business interruption coverage to a certain number of days. *See id. High Country* has no application to the present case, because the appraisal panel did not make any coverage determinations – the award does not discuss causation, does not seek to limit the award based on some policy provision, and generally does not discuss coverage or the applicable insurance policy at all; instead, the award merely finds that there is no storm damage at the property.

Cox's Paradise cites to *North Carolina Farm Bureau Mutual Insurance Company, Inc. v. Sadler*, 711 S.E.2d 114, 114-18 (N.C. 2011), also for the proposition that coverage and liability

cannot be determined during appraisal. In that case, the insurer contested certain portions of an appraisal award, arguing that only a small percentage of the overall award applied to covered damages. *Sadler*, 711 S.E.2d at 116. The trial court granted summary judgment in favor of the insureds on a breach of contract claim based on the appraisal award, and the North Carolina Supreme Court reversed, finding that the insurer was entitled to assert coverage defenses after receipt of the appraisal award. *Id.* at 117. There, the insurer simply sought to avoid paying the full appraisal award and sought to assert coverage defenses after an appraisal award was returned, which was proper pursuant to the terms of the applicable policy.

In *Fisher v. American Family Mutual Insurance Company*, 2018 WL 10196066 (D. Colo. June 14, 2018), the court declined to set aside an appraisal award and stated simply: "The appraiser is hired and is told what to 'appraise' and then gives a dollar value to whatever he or she was told to appraise. Nowhere in Colorado law or elsewhere have I found any support for the proposition that an *appraiser* determines what to appraise." *Fisher*, 2018 WL 10196066 at *5. But that is precisely what occurred here – the appraisal panel was convened to determine the amount of storm damage loss, and two out of the three members of the panel determined that the amount of loss was $0.00.

*Mccaffrey v. Great Northern Insurance Company*, 2021 WL 307506 (D. Colo. Jan. 29, 2021)[2], concerned a situation where the appraisal panel unilaterally reduced the scope of the appraisal. There, the appraisal panel was instructed to determine the amount of loss for damage because of intrusive testing, and the amount of loss for damage to the plaintiffs' home from water damage. *Mccaffrey*, 2021 WL 307506 at *4. However, the umpire limited the award to only

---

[2] Westlaw refers to this case as *Edward v. Great Northern Insurance Company*, but the citation in Cox's Paradise's Motion to Vacate is correct – the actual style should be *Mccaffrey v. Great Northern Insurance Company*.

damage caused by intrusive testing. *Id.* For that reason, the appraisal was vacated. *Id.* at *6. That is not the case here, as the appraisal panel was convened to appraise storm damage and returned an appraisal award regarding that storm damage.

In simplest terms, Cox's Paradise submitted an insurance claim for storm damage, requested appraisal to determine the amount of loss resulting from storm damage, and received an appraisal award identifying no storm damage at the property. The appraisal award did not discuss coverage or exclusions, did not make actual coverage determinations, did not state that anything was or was not covered, and did not make any liability determinations. Instead, as allowed by law, the appraisal panel merely sought to identify what, if any, storm damage was present and ultimately determined that there was none. This result not only serves the purpose of appraisal, but also conforms with the guidelines set out by courts regarding overlap between causation and valuation. Therefore, for the reasons set out herein and in Middlesex's Motion for Summary Judgment, the Motion to Vacate is due to be denied, and the appraisal award is due to be enforced.

**IV.  Conclusion.**

Cox's Paradise submitted an insurance claim for storm damage. The parties eventually entered into appraisal to determine the amount of loss for any alleged storm damage, and two of the three members of the appraisal panel determined that the amount of loss was $0.00. The appraisal panel did not engage in improper coverage or causation determinations; instead, it merely ascertained storm damage, and was within its right to separate out storm damage from any pre-existing damage. Therefore, the Motion to Vacate is due to be denied.

WHEREFORE, PREMISES CONSIDERED, Middlesex respectfully requests that this Honorable Court enter an Order denying the Motion to Vacate.

Respectfully submitted,

/s/ Seth T. Hunter
Seth T. Hunter (BPR No. 030200)
Brenen G. Ely (BPR No. 040588 (and previously admitted *pro hac vice*))
Lauren A. Wiggins (admitted *pro hac vice*)
Counsel for Middlesex Insurance Company

**OF COUNSEL:**
ELY, McCURRY, & HUNTER, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
shunter@elyfirm.com
bely@elyfirm.com
lwiggins@elyfirm.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the CM/ECF electronic filing system and/or U.S. Mail on this the 23rd day of September, 2025.

Lewis Cobb
SPRAGINS, BARNETT & COBB, PLC
312 East Lafayette Street
Jackson, Tennessee 38301
lewiscobb@spragginslaw.com

/s/ Seth T. Hunter
**OF COUNSEL**